**CONTINENTAL COFFEE PRODUCTS CO., Plaintiff,**

v.

**BANQUE LAVORO S.A., BSI–Banca Della Svizzera Italiana, Pedro Uribe A. Sucesores LTDA, Banque Du Gothard, Banque Worms, Banque Bruxelles Lambert (Suisse) S.A., Bank Mees & Hope NV, Bayerische Vereinsbank S.A. (BV France), Bozzo USA Trading Inc., a Subsidiary of Bozzo Commerce De Cafe, Bozzo Commerce De Cafe and Bozzo Brazil S.A., and XYZ Corp., that name being fictitious, the true name of the defendant being unknown to plaintiff, the person intended being any party with a claimed right of payment in this matter, Defendants.**

No. 92 Civ. 0156(PNL).

United States District Court, S.D. New York.

May 23, 1994.

**1236**

Wood, Williams, Rafalsky & Harris, New York City (Paul T. Williams, Jr., of counsel), for plaintiff.

Milgrim Thomajan & Lee, New York City (David P. Langlois, of counsel), for defendant BSI–Banca della Svizzera Italiana.

Tenzer, Greenblatt, Fallon & Kaplan, New York City (Paul J. Giacomo, Jr., Daniel Hume, of counsel), for defendant Pedro Uribe A. Sucesores, Ltda.

Boulanger, Hicks, Stein & Churchill, New York City (Steven J. Stein, Todd C. Girolamo, of counsel), for defendant Banque Worms.

Zurhellen & La Rue, New York City (J. Owen Zurhellen, III, of counsel), for defendants Bozzo Brazil, S.A. and Banco Investcorp, S.A.

### OPINION AND ORDER

LEVAL, Circuit Judge.*

This interpleader action concerns the proceeds of a shipment of coffee shipped by defendant Bozzo Commerce de Cafe to plaintiff Continental Coffee Products Co.[1] The Bozzo shipment to Continental fulfilled a number of contracts for the sale of coffee by Bozzo to Continental. These contracts, as well as the coffee they concerned, were used by Bozzo as security for credit it obtained in various financial transactions. Before Continental paid Bozzo for the shipment, several of the secured creditors from those transactions informed Continental of their claims to the proceeds of the shipment. Continental then deposited the full amount due Bozzo for the shipment with the Court,[2] and brought this action of interpleader under 28 U.S.C. § 1335, asking the court to absolve it of further responsibility and distribute the proceeds in whatever manner is appropriate.

Several of the interpleader defendants move for summary judgment claiming the proceeds of specific contracts among those that comprised the shipment of coffee.[3] Plaintiff's motion for summary judgment and

---

* Sitting by designation.

1. There are three Bozzo entities in this litigation: Bozzo Commerce de Cafe, Bozzo Brazil S.A., and Bozzo U.S.A. Trading Inc. The precise relationship among them is unclear. Plaintiff's unchallenged statement in its Rule 3(g) statement is that Bozzo U.S.A. is a domestic corporation with offices in White Plains, New York, and that it is a corporate subsidiary of Bozzo Commerce de Cafe, a Swiss corporation. The names "Bozzo" appearing alone, and Bozzo Commerce, in this opinion refer to Bozzo Commerce de Cafe.

2. Plaintiff deposited $523,681.30 with the court. Defendants BV France and BSI settled their competing claims to the proceeds of contract P–3673, and received $132,203.49, representing principal of $129,630.76 plus interest, from the funds on deposit with the court. Judgment, March 24, 1993. This reduced the principal on deposit with the court to $374,050.54.

3. Not all contracts comprising the shipment are claimed by the motions for summary judgment discussed in this opinion. Specifically, there are no motions for summary judgment for the proceeds of Contracts P–3559, P–3560, and P–3562. In addition, claims to the proceeds of Contract P–3673 were settled March 24, 1993.

two defendants' procedural motions are also decided herein.

### Background

#### A. *Security interests under the New York State Uniform Commercial Code*

 Defendants move for summary judgment on the basis that they held security interests in lots of coffee included in the shipment to Continental, or in Bozzo's accounts receivable for such coffee. Federal courts are bound by state law governing the rights of rival claimants to a given fund in interpleader actions brought under 28 U.S.C. § 1335. *Equitable Life Assurance Society v. McKay*, 837 F.2d 904, 905 (9th Cir.1988); *Continental Assurance v. Platke*, 295 F.2d 571 (7th Cir.1961); 7 Charles A. Wright et al., *Federal Practice & Procedure* § 1713 (2d ed. 1986).

##### 1. *Creation and attachment of a security interest*

The New York Uniform Commercial Code (hereinafter "NYUCC") provides that a security agreement[4] is effective "between the parties, against purchasers of the collateral and against creditors." § 9–201. However, the creditor's security interest does not become *enforceable* against the debtor or third parties until three events have occurred:

(1) Either the collateral has come into the possession of the secured party, or the debtor has signed a security agreement that contains a description of the collateral;

(2) The secured party has given value to the debtor; and

(3) The debtor has acquired rights in the collateral. N.Y.U.C.C. § 9–203(1).

Once these three events have occurred, the security interest is enforceable and the interest is said to have "attached." § 9–203(2).[5] While the additional step of *perfection* of the security interest offers the secured party additional rights (see below), any security interest that has attached gives the secured

party certain rights to the collateral. The agreement is "effective according to its terms between the parties, against purchasers of the collateral and against creditors," § 9–201, and, significantly, gives the secured party the right to proceeds of the collateral, as provided by § 9–306 (unless the agreement states otherwise, § 9–203(3)). Section 9–301 states that an unperfected security interest is subordinate to the rights of certain listed creditors, which implies that the unperfected interest has priority over the rights of creditors not listed in that section. *See* James J. White & Robert S. Summers, *Uniform Commercial Code* § 24–2 (3d ed. 1988): "[T]he secured creditor, even an unperfected secured creditor, has greater rights in his collateral than any other creditor unless Article Nine provides otherwise."

Each of the claimed security interests, whether in the coffee sold to Continental or the accounts receivable for that coffee, is evaluated below according to these criteria for the creation and attachment of security interests.

##### 2. *Perfection of the security interest*

Perfection of a security interest provides additional security to the creditor, in that the creditor with a perfected security interest has priority over creditors with unperfected security interests (as well as priority over general creditors). *See* § 9–312 (prioritizing security interests); White & Summers, *supra*, at § 22–7 ("The perfected secured creditor is nearly as far above the unperfected secured creditor in the priorities pecking order as the unperfected secured creditor is above the general creditor.").

Because methods of perfecting a security interest vary in different jurisdictions, the N.Y.U.C.C. includes choice of law provisions that determine which law governs the perfection and effect of perfection of a security interest. This case involves security interests in goods and in accounts. The applicable choice of law provisions follow.

---

4. "Security agreement" is defined in the N.Y.U.C.C. as "an agreement which creates or provides for a security interest," § 9–105(1). A "security interest" is, in turn, defined as, "an interest in personal property or fixtures which secures payment or performance of an obligation." § 1–201(37).

5. A security agreement may cover future advances, as well as collateral acquired after the agreement is entered into. § 9–204. In the latter case, the security interest "attaches" to each additional item of collateral at the moment that the events specified in § 9–203(1) occur.

### a. Choice of law—Perfection of security interest in goods

The perfection and effect of perfection of a security interest *in goods* are governed by the law of the jurisdiction where the collateral was when the last event relevant to perfection occurred. § 9–103(1)(b).

Several interpleader defendants claim that they held security interests in goods in the possession of Bozzo Commerce de Cafe. Those goods are coffee beans that were shipped from South America to ports in the United States. Section 9–103(1)(b) requires the security interests claimed in the coffee beans to be determined by the laws of the jurisdictions where the beans were located at the time the perfecting act is claimed to have occurred.

### b. Choice of law—Perfection of security interest in accounts

The NYUCC provides that the perfection and effect of perfection of a security interest *in accounts* is governed by the law of the jurisdiction where the debtor is located, with several provisions that apply when the debtor is located outside the United States, in a jurisdiction that does not provide for perfection of the security interest by filing or recording in that jurisdiction. § 9–103(3)(b). The code provides that for such a debtor, perfection of a security interest *by filing* is determined by the law of the jurisdiction where the debtor has its major executive office in the United States; or alternatively, if the debtor is located in neither the United States or Canada, perfection may be accomplished *by notification* to the account debtor. § 9–103(3)(c). The account debtor is the person who is obligated on an account covered by the security interest, § 9–105(1)(a), in this case, Continental Coffee.

Uncontroverted submissions establish that Bozzo Commerce, the debtor in this case, is located in a jurisdiction which is not a part of the United States or Canada, and which does not provide for perfection of the security interest by filing. *See* Plaintiff's uncontroverted Rule 3(g) Statement (Bozzo Commerce de Cafe is a foreign corporation based in Switzerland, which does business through

a wholly-owned subsidiary, Bozzo U.S.A. Trading Inc., whose office is in Westchester County, New York State); Pedrazzini's uncontroverted Cert. ¶ 2 (Pedrazzini, a Swiss attorney, certifies that the law of Switzerland does not provide for perfection of security interests by filing). Therefore, the notice provisions of § 103(3)(c) come into play. A creditor claiming a security interest in any account receivable of Bozzo could perfect its interest by either of the methods available in § 9–103(3)(c): by following New York State law for perfection of a security interest, or by notifying Continental Coffee, the account debtor, of its interest in Continental's debt to Bozzo Commerce.

### c. Perfection under New York State Law

As just noted, the perfection of a security interest in accounts may be achieved by following New York State law. New York law provides for perfection of any security interest by filing a financing statement (with limited exceptions not applicable in this case). § 9–302(1).[6] The filing is made with the department of state, and, in addition, if the debtor has a place of business in only one county of the state, the filing must be made in that county. § 9–302; § 9–401(1)(c). Uncontroverted affidavits filed by a party to this case state that Bozzo Commerce de Cafe did business in the United States through its wholly-owned subsidiary, Bozzo U.S. Trading, Inc., and that the Bozzo U.S. was located in White Plains, in Westchester County. (Stern Aff. ¶ 7, submitted by BSI–Banco Della Svizzera Italiana.) Thus, a creditor could perfect a security interest in a Bozzo Commerce account by filing a financing statement with the New York department of state and (assuming Bozzo U.S. trading has no other offices in New York State) with the filing officer in Westchester County.

### 3. Priority of creditors

Generally speaking, where two or more creditors claim security interests in the same collateral, the N.Y.U.C.C. establishes a hierarchy of creditors, which places the perfected

---

6. Of course, § 9–103(3)(c), discussed immediately above, must be borne in mind: that section, which is part of the N.Y.U.C.C.'s choice of law provisions, states that when a debtor is located outside the United States, a security interest in an account may be perfected *either* according to the law of the jurisdiction where the debtor has its main U.S. office, *or* by notice to the account debtor. Thus, a financing statement is not necessarily required to perfect a security interest in an account; in certain circumstances, the interest may be perfected by notice to the account debtor.

secured creditor first, the unperfected secured creditor next, and the general creditor last. However, many exceptions to this hierarchy exist.

a. *Unsecured creditors with priority interests*

In limited circumstances, unsecured creditors may have priority over holders of unperfected security interests. These circumstances are listed in § 9–301. They include:

(1)(b) a person who becomes a lien creditor before the security interest is perfected;

(c) in the case of goods ... a person who is not a secured party and who is a transferee in bulk ... to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected;

(d) in the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that he gives value without knowledge of the security interest and before it is perfected.

b. *Priority interests among secured creditors*

Priorities among conflicting security interests in the same collateral are established by § 9–312. Generally, the most senior of conflicting security interests has priority—the first filed or perfected, in the case of perfected interests, and the first to attach, in the case of unperfected interests. § 9–312(5). (Perfected interests have priority over unperfected interests, by the combined operation of §§ 301 and 312.)

Special priority rules govern purchase money security interests, in inventory and in other collateral. A purchase money security interest is defined as a security interest that is "(a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." § 9–107. Such an interest is "in inventory" when it is in goods held by a person who holds them for sale. § 9–109(4). By this definition, several of the interpleader defendants claim purchase money security interests in inventory, and others hold purchase money security interests in other collateral.

The perfected purchase money security interest in inventory has priority over a conflicting security interest, and priority over identifiable cash proceeds received when the inventory is delivered to a buyer, if certain conditions have been met. § 312(3). A perfected purchase money security interest in other collateral also has priority over conflicting security interests in the same collateral, provided that it has been perfected at the time the debtor takes possession of the collateral. § 312(4).

The priority of claims under these rules for each set of conflicting security interests is discussed below.

*Discussion*

Each of the contracts that is the subject of a motion for summary judgment is discussed separately, below.[7]

A. *Contract P–3674*

■ Pedro Uribe A. Sucesores (Uribe), which sold the lots of coffee covered by contract P–3674 to Bozzo, moves for summary judgment on its claim to the proceeds of this contract. Proceeds in the amount of $126,744.47 are on deposit with the court. (Sutherland Aff. ¶ 6, attached to Pl. Mot. Sum. Judg.) Banque Worms (Worms), a bank that loaned money to Bozzo, opposes Uribe's motion, and moves for summary judgment on its own claim to the same funds.

I find for the reasons that follow that both Worms and Uribe have supportable claims to security interests in the proceeds of this contract. However, the court does not find it necessary to establish at this point whether the claimed security interests exist, and cannot determine which has priority, because, as described below, questions of fact regarding the perfection of one of those interests exist, and the priority between the claimed interests cannot be established until those factual questions are resolved. Accordingly, neither

---

**7.** Each contract has at least two reference numbers: the Bozzo contract number, beginning with the letter V; and the Continental contract number, beginning with the letter P. The discussion that follows uses the Continental numbers.

party can be awarded summary judgment for the proceeds of contract P–3674.

### 1. *Existence of Uribe's security interest*

#### a. *Uribe's contentions*

Uribe claims a security interest in the coffee, and the proceeds of the sale of the coffee, arising out of the contract by which Uribe sold this coffee to Bozzo Commerce. (Contract attached to Uribe Aff. as Ex. B.)

Uribe's argument has two prongs. One is that the contract reserved title in Uribe until Bozzo paid it for the coffee, and, Uribe argues, this retention of title created a security interest in the coffee. The other is based on a clause in the contract that states the contract is made "on the conditions of the Green Coffee Contract' of the Green Coffee Association of New York City." Uribe submits a copy of the Green Coffee Contract, which states that if either party fails to perform or breaches the agreement, the other party shall be entitled to the remedies and relief provide for by the N.Y.U.C.C. (Uribe Ex. C.) According to Uribe, the failure by Bozzo Commerce to pay for the coffee constitutes a breach which entitles Uribe to the rights and remedies provided by the N.Y.U.C.C. The N.Y.C.C.C. entitles the secured creditor to the proceeds of the collateral, § 9–306. Therefore, argues Uribe, it had a security interest in contract P–3674 and is entitled to the proceeds of that contract.

Uribe submits a signed contract of sale which states, "The property transfer of the goods will occur only after the payment of the price and supplements if any." (Uribe Ex. B.)[8] Uribe alleges that by delaying transfer of the property until payment, this sentence is "title retention language," and further, that the reservation of title "created a security agreement under relevant provisions of the N.Y.U.C.C." (Uribe Aff. ¶ 14). Uribe's reading is supported by § 2–401(1) of the N.Y.U.C.C. This section states that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."[9] Uribe's claim to a security interest is further supported by the N.Y.U.C.C. definition of a purchase money security interest as an interest "taken or retained by the seller of the collateral to secure all or part of its price." § 9–107.

Uribe's showing appears to meet the criteria set forth in § 9–203(1) for the creation and attachment of a security interest. Uribe submits a security agreement signed by the debtor, Bozzo Commerce, that describes the collateral coffee beans; Uribe gave Bozzo value—the coffee; and Bozzo had rights in the collateral—it took possession of the coffee and sold it to Continental.

Uribe's assertion that this security interest became a security interest in Bozzo's accounts receivable for the proceeds due from the sale of the coffee to Continental is also supported by the N.Y.U.C.C., which states:

> [A] security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

N.Y.U.C.C. § 9–306(2) (McKinney's 1990).

#### b. *Banque Worms' objections*

Banque Worms challenges the existence of Uribe's security interest on numerous grounds, among them:

—that Uribe did not allege that Bozzo breached, failed to perform, or repudiated the Uribe–Bozzo contract, and such allegation is necessary under the contract to invoke the N.Y.U.C.C.;

—that the contract between Uribe and Bozzo Commerce provides for application of the N.Y.U.C.C. only to determine remedies

---

8. The contract is not signed with a signature, but with a stamp. The stamp appears to be an adequate signature: " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." N.Y.U.C.C. § 1–201(39).

9. The N.Y.U.C.C. definition of a security interest reads in part:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2–401) is limited in effect to a reservation of a "security interest."
N.Y.U.C.C. § 1–201(37).

for breach or failure to perform, *not* to determine whether Uribe held any security interest in the coffee or whether that interest attached.

—that any security interest Uribe might have had in the coffee was extinguished when the coffee was sold because Uribe authorized the sale. *See* § 9–306(2) (quoted above).

Worms makes these arguments both to oppose Uribe's motion for summary judgment on Uribe's claim to these funds, and to support Worms' own motion for summary judgment. Worms' arguments are not, for the following reasons, sufficient to establish as a matter of law that Uribe has no security interest in the proceeds of this coffee.

Uribe's allegation that Bozzo failed to pay it for the shipment is uncontroverted. This establishes a breach of the contract, and the terms of the contract grant the remedies of New York's U.C.C. against the party that is in breach. Uribe's argument that its reservation of title gave it a security interest under the N.Y.U.C.C. that is enforceable against the proceeds of the collateral is perhaps open to question, but it has not been effectively countered by Worms. Worms' contention that any security interest Uribe may have had in the coffee was extinguished when Bozzo sold the coffee ignores the express language of § 9–306(2), that when the collateral is sold with the creditor's authorization, the security interest continues in the proceeds of the collateral.

However, in the face of Worms's own claimed security interest (see below), Uribe's failure to show that it perfected its security interest in the coffee precludes awarding it summary judgment on these proceeds. The N.Y.U.C.C., which Uribe argues governs its security interest under the contract with Bozzo, states that where a security interest is in goods, "perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." § 9–103(1)(b). No showing has been made as to where the coffee was at the time Uribe allegedly perfected its interest in the coffee, or what the law of that jurisdiction was as to perfection and the effect of perfection.[10] Thus no conclusion can be reached as to whether Uribe perfected its interest in the proceeds of contract P–3674, and if so, when perfection was achieved.[11]

### 2. *Banque Worms' security interest*

Banque Worms cross-moves for summary judgment on its right to these funds. Worms presents strong evidence of its security interest in Bozzo's accounts payable. (This evidence is detailed in the discussion of contract P–3561, below.) However, any entitlement by Worms to these funds cannot be determined without resolution of the issues surrounding Uribe's entitlement to the same funds. Worms' motion for summary judgment as to contract P–3674 is denied.

### D. *Contract P–3561*

■ Banque Worms moves for summary judgment on its claim to the proceeds of contract P–3561. Proceeds of this contract in the amount of $ 78,117.95 are on deposit

---

**10.** A Uribe affiant stated his belief that upon arrival in Houston, a customs broker engaged by Bozzo USA saw the coffee through customs and provided a sample to Continental, and that Continental then transported the coffee to its roasting facilities. (Uribe Aff. ¶ 19.)

**11.** The interest Uribe claims is a purchase money security interest in inventory under the terms of the N.Y.U.C.C. The claimed interest fits the definition of a purchase money security interest because it was "taken or retained by the seller of the collateral to secure all or part of its price," § 9–107, and it is an interest "in inventory" because it is in goods held by a person (Bozzo Commerce) who holds them for sale. § 9–109(4).

However, Uribe's claimed interest does not qualify for the special priority given by § 9–312(3) to certain purchase money security interests in inventory. That section applies only to interests that are perfected "at the time the debtor receives possession of the inventory." Uribe by its own admission did not perfect any interest it had until November 14, 1991, at the earliest. (Uribe Aff. ¶ 22–24.) However, Bozzo Commerce had possession of the coffee at least by October 1991, when Continental states that it took delivery of shipments of coffee purchased from Bozzo USA. (Continental Reply to Uribe Counterclaim ¶ 12.) Uribe thus had not perfected its interest in the coffee at the time Bozzo received possession of the inventory, so this interest does not qualify for special priority under § 9–312(3).

with the court. (Sutherland Aff. ¶ 6, attached to Pl. Mot. Sum. Judg.) Bozzo Brasil, S.A. and Banco Investcorp, S.A. jointly oppose the Worms' motion on the ground that they have superior claims to these funds.[12]

1. *Claim by Banque Worms to Contract P–3561.*

Banque Worms claims that Bozzo assigned Worms the right to payment under this contract, to secure a line of credit extended to Bozzo by Worms. Worms thus alleges that it has a security interest in Bozzo's accounts receivable. To support its claim Worms presents the following documents:

(1) Convention Cadre de Cession de Creances Professionnelles a Titre de Garantie (Boutou Decl. Ex. 4), or Master Agreement for the Assignment of Business Debts as Security (Certified Translation of the Convention, Boutou Decl. Ex. 5). This agreement, made under French law and signed by Bozzo and Worms August 26, 1991, provides that as security for credit extended by Worms, Bozzo will assign to Worms debts owed by Bozzo's customers. (Ex. 5 ¶ 2.) The agreement specifies that each assignment will be effected by use of an instrument called the "Acte de Cession de Creances Professionnelles," or written assignment of business debts. (Ex. 5 ¶ 3).

(2) "Acte de Cession de Creances Professionnelles" (Boutou Decl. Ex. 6). According to Worms, this listing of individual debts assigned by Bozzo to Worms was provided to Worms on or about August 26, 1991, at the same time as the Master Agreement. The list of assigned debts includes Bozzo contract number V–13223.

(3) Liste de Contrats Cedes. (Boutou Decl. ¶ 3, Ex. 1.) This list, on Bozzo letterhead, includes contract V–13223.

(4) Bozzo contract V–13223 with Continental Coffee, provided by Bozzo to Worms. (Boutou Decl. ¶ 3, Ex. 2.) This contract shows that Bozzo contract V–13223 is Continental contract P–3561.

(5) A notice from Worms, apparently delivered on November 18, 1991,[13] informing Continental that Bozzo Commerce transferred the debts for contract V–13223, in the amount $73,275.36 to Worms (as well as contract V–13306/P–3674, discussed above), and instructing Continental to pay Worms directly for those two contracts. (Boutou Decl. ¶ 6, Ex. 7.)

Worms further claims that its security interest in contract V–13223 was perfected in accordance with the laws of France by the notice given to Continental dated November 18, 1991. (Canac Decl. ¶ 3.) Worms argues that this notice also sufficed to perfect its security interest under § 9–103(3)(c) of the Uniform Commercial Code, which provides that when the debtor is in a country other than the United States or Canada, and that country does not provide for perfection of security interests by filing, a security interest may be perfected by notice to the account debtor. On the basis of this showing, Worms moves for summary judgment on the proceeds of contract P–3561.

2. *Claim by Bozzo Brasil, S.A. & Banco Investcorp, S.A. to Contract P–3561.*

Bozzo Brasil, a trading company, and Banco Investcorp ("Investcorp"), a bank that has loaned money to Bozzo Brasil, (hereinafter referred to together as Bozzo Brasil) claim rights to the coffee shipped under contract P–3561 (as well as coffee shipped under contract P–3560). They present the following documents to support their claims:

(1) A certified translation of a "Collateral Security Agreement" dated October 21, 1991, showing that 1500 bags of coffee, identified as "002/174–0/1158," were among those pledged by Bozzo Brasil to Investcorp as security for a loan. (Zurhellen Aff. Ex. B, Art. 2.) (The record shows that this lot of coffee comprised contract P–3561, sold by Bozzo Commerce to Continental.[14])

---

**12.** Bozzo Brasil and Banco Investcorp have not moved for summary judgment on their claims to these funds.

**13.** While this notice is not dated, Bozzo's statement through the declaration of its Vice President Lionel Boutou, that the notice was sent November 18, 1991, is supported by the fax cover sheet bearing that date that accompanies the copy of this notice submitted by Continental as Exhibit I to its Complaint.

**14.** See invoice no. 310722, attached as Ex. B to the Complaint, which identifies lot 002/174–

(2) Bill of lading showing Bozzo Brasil as the shipper of lot 002/174–0/1158. (Zurhellen Aff. Ex. A.)

(3) Communication from Bozzo Brasil to Continental dated November 18, 1991, stating that Bozzo USA is "not empowered to give you a delivery order" on "Bill No. 1601009" (this is the number of the bill of lading for lot 002/174–0/1158) and directing Continental not to pay Bozzo USA or Bozzo Commerce de Cafe for the shipment. (Zurhellen Aff. Ex. C.)

(4) Letter dated Nov. 21, 1991, from Bozzo USA to Continental, conveying instructions from Bozzo Commerce that payment be made directly to the shipper, Bozzo Brasil. (Zurhellen Aff. Ex. D.)

3. *Discussion*

Banque Worms appears to have met the criteria set by N.Y.U.C.C. § 9–203(1) for the creation, attachment and perfection of a security interest in the claimed Bozzo Commerce account. Worms has submitted a security agreement signed by Bozzo Commerce that describes the collateral accounts receivable; the agreement indicates that Worms gave value to Bozzo Commerce; and Bozzo Commerce had rights in the collateral—the accounts payable were its own. Under NYUCC § 9–203(2), the Banque Worms security interest in this shipment of coffee attached as of August 1991, when the invoice was listed in the Acte de Cession de Creances Professionnelles. Worms also gave notice of its security interest in this account to the account debtor, Continental Coffee, thus perfecting its interest under NYUCC § 9–103(3)(c).

As to the alleged security interest of Banco Investcorp, the record in the case shows that the security interest asserted by Banque Worms in this shipment attached in August 1991, months before the security agreement between Bozzo Brasil and Banco Investcorp was entered into on October 21, 1991. There is some question as to the bonafides of this security agreement.[15] However, even assuming attachment as of October 21, 1991, this interest is subordinate to the Banque Worms interest under NYUCC § 9–312(5)(b), which states: "So long as conflicting security interests are unperfected, the first to attach has priority."

Bozzo Brasil also argues that the Worms claim never came into existence, because Bozzo Commerce never had title to the coffee so that it could not have offered it to Worms as security. However, Bozzo Brasil submits no evidence to support this claim, except that the bills of lading covering the coffee for its shipment from South America to the United States bear the name of Bozzo Brasil as shipper. Bozzo Brasil admits that it transferred these bills of lading to Bozzo USA while the ship was en route to the United States. The bills of lading show delivery to Continental Coffee, and from other documents in the record it is clear this delivery was pursuant to an April 1991 contract between Bozzo Commerce/Bozzo USA and Continental. Bozzo Brasil demonstrates no contract of its own with Continental, nor does Bozzo Brasil show that it sold this coffee to Bozzo Commerce for subsequent sale to Continental. In other words, there is nothing in the record to indicate that Bozzo Brasil had any ownership rights in this coffee separate from the rights of Bozzo Commerce. This record invites the conclusion that Bozzo Brasil was acting as an agent of Bozzo Commerce when it shipped coffee to Continental

0/1158 as sold under contract V–13223/P–3561. The contract underlying the invoice, dated April 19, 1991, is attached as Ex. 2 to the Boutou Decl. submitted by Banque Worms.

15. The Agreement states that as of its date, October 21, 1991, the coffee was in a bonded warehouse in New Orleans, but Bozzo stated in its answer to the complaint that the coffee did not arrive in New Orleans until "on or about November 1991." The security agreement pledges Bozzo Brasil not to sell the coffee or to move it from the warehouse without the permission of Banco Investcorp, but this condition seems never to have been adhered to. First, the coffee had already been sold under an April 1991 contract between Bozzo Commerce and Continental. Second, Bozzo Brasil by its own admission mailed the original bills of lading to Bozzo USA "after shipment," (and in time for Bozzo USA to receive these bills in order to take delivery of the coffee when it arrived in New Orleans) (Mem. Oppos. at 3), and under the NYUCC it appears that this transfer effectively transferred title to the coffee. *See* NYUCC § 1–201(15) (bill of lading is a "document of title"); NYUCC § 7–504(1) (transferee of a document, including a bill of lading, "acquires the title and rights which his transferor had or had actual authority to convey").

under a contract between Bozzo Commerce and Continental, and when it transmitted the bills of lading for the coffee to Bozzo USA to facilitate this shipment. This conclusion is reinforced by Bozzo Brasil's failure to contest the accuracy of Paragraph 11 in the Complaint, which states, "Upon information and belief, at all times hereinafter mentioned, defendant Bozzo Brazil S.A. was and is a corporation affiliated with defendant Bozzo Commerce de Cafe...."

Accordingly, I find that Bozzo Brasil has failed to show any ownership interest in this coffee separate from its ownership by Bozzo Commerce, prior to the sale to Continental.

Neither Bozzo Brasil nor Banco Investcorp has succeeded in showing any superior interest in the proceeds of this invoice. Accordingly, Banque Worms' motion for summary judgment to the proceeds of contract P–3561 is granted.

### E. Contract P–3181

BSI–Banca della Svizzera Italiana ("BSI") moves for summary judgment on its claim to the proceeds of contract P–3181. The amount on deposit with the court as proceeds of this contract is $ 60,471.13. (Sutherland Aff. ¶ 6, attached to Pl. Mot. Sum. Judg.) As discussed below, the record indicates that Banque du Gothard has also claimed entitlement to these funds.

### 1. Claim by BSI to Contract P–3181.

BSI's claim to the proceeds of this contract (as well as other contracts discussed below) is based on a financing arrangement between BSI and Bozzo Commerce de Cafe S.A. that gave BSI a purchase money security interest[16] in Bozzo Commerce accounts receivable financed by BSI. As support for its claim, BSI presents a demand promissory note in favor of BSI in the amount of $6 million, and a specific security agreement that gave BSI a security interest in all BSI-financed coffee, including documents of title, accounts receivable and the proceeds arising from sale of the coffee. (Stern Aff. ¶¶ 4–5 and Exs. A–B.)

As BSI released documents and coffee to Bozzo Commerce to enable Bozzo to ship and sell the coffee, BSI protected its security interests by receiving signed Trust Receipts, which named Bozzo Commerce trustee of BSI's continuing security interest in the documents and coffee, and confirmed Bozzo's obligation to remit proceeds from the sale of the entrusted coffee to BSI. BSI submits these documents, as well. (Stern Aff. ¶ 6 and Ex. B–D of BSI's Answer and Claim in Interpleader.) Bozzo Commerce authorized Bozzo U.S.A. to conduct certain of these transactions on behalf of Bozzo Commerce, (Stern Aff. ¶ 7 and Ex. C), and Bozzo U.S.A. signed certain of the Trust Receipts. (BSI Answer Exs. B–D.) BSI filed financing statements with the county clerk in Westchester County and the New York Secretary of State of New York State in 1990, to perfect its security interest in Bozzo Commerce goods financed by BSI. (Stern Aff. ¶ 13 and Ex. G.) In addition, on Nov. 15, 1991, BSI sent the first of several letters to Continental notifying it of BSI's security interest in the coffee delivered by Bozzo to Continental. (Complaint Ex. H.)[17]

Attached to BSI's claim in interpleader are three Trust Agreements, each signed by Bozzo U.S.A. Attached to each Trust Agreement are the bill of lading and invoice that, according to BSI, are the subject of the Trust Agreement. The invoices are for contracts P–3180 (Ans. Ex. B), P–3181 (Ex. C) and P–3673 (Ex. D).[18]

BSI's submissions establish its claim to the proceeds of contract P–3181, as follows:

—The security agreement produced by BSI meets the criteria set by N.Y.U.C.C. § 9–203(1) for an effective, enforceable security interest in the accounts receivable claimed by BSI: the security agreement and rider describing collateral are signed by Bozzo Commerce; the rider describes collateral

---

**16.** BSI's interest is a purchase money security interest because BSI's financing allowed Bozzo Commerce to acquire rights in the collateral that secured the financing. § 9–107(b).

**17.** The first letter, dated Nov. 15, 1991, states that BSI believes it has an interest in all Bozzo's coffee then stored in Continental's warehouse. A subsequent letter, dated Nov. 22, 1991, advises Continental that BSI has perfected security interests in coffee financed by it and sold by Bozzo

Commerce, and advises Continental to confer with BSI before remitting any payments to Bozzo for the coffee shipment. A later letter, dated December 17, specifically references contracts P–3560 and 3561, and instructs Continental to disregard payment instructions Continental had by then received from Bozzo USA, directing payment to Bozzo Brasil for these shipment.

**18.** BSI's claim to the proceeds of contract P–3673 was settled. Judgment, March 24, 1993.

as all property whose purchase is financed by BSI, including inventory, goods, documents and present or future accounts receivable; the demand promissory note shows that BSI gave value for the security interest; and the sale of the coffee by Bozzo Commerce shows that it had rights in the collateral.

—The trust agreements under which BSI released documents to Bozzo Commerce to enable Bozzo to ship and sell the coffee show that BSI financed lot P–3181, making the account receivable for the sale of this lot part of the collateral covered by the security agreement.

—The financing statements filed with the Westchester County Clerk and the New York Secretary of State served to perfect BSI's interest in the account receivable under N.Y.U.C.C. § 9–103(3)(c). That section provides that if the debtor is located outside the United States and Canada, in a jurisdiction that does not provide for perfection of security interests by filing in the jurisdiction, a creditor may perfect the security interest by following the law of the jurisdiction where the debtor has its principal place of business in the U.S. According to the certification of Matteo Pedrazzini, a Swiss attorney, Swiss law does not provide for the perfection of a security interest by filing or recording it in Switzerland. (Pedrazzini Cert. ¶ 2.) BSI could thus perfect its security interest in the account either by following New York State law, or by notifying the account debtor, Continental Coffee, of its interest in the account. § 9–103(3)(c). For a company doing business in only one county of New York State, New York law provides for perfection of security interests by filing a financing statement with the department of state and with the filing officer of that county. §§ 9–302; 9–401(1)(c). BSI filed the required financing statements in 1990,[19] perfecting its interest in

Bozzo Commerce accounts receivable as of that date.

BSI has produced uncontroverted evidence that the coffee sold under this contract secured its loan to Bozzo Commerce, that it protected this security interest by use of a trust agreement with Bozzo Commerce when it released bills of lading to Bozzo Commerce for the purpose of delivering this coffee to Continental, and that it perfected this security interest both by filing a financing statement under the terms of the N.Y.U.C.C. and by notifying Continental, the account debtor, of its interest.

2. *Claim by Banque du Gothard to Contract P–3181.*

Attached to the complaint as Exhibit E is correspondence dated November 18, 1991 from Banque du Gothard to Continental, claiming that Bozzo Commerce assigned the proceeds of contract P–3181 to the bank as collateral for a credit line. In addition to a cover letter, the documents, which are written in Italian, French and German, appear to be (1) an agreement, signed October 22, 1991, by which Bozzo Commerce assigned to Banque du Gothard a number of Bozzo's accounts payable; (2) a copy of Bozzo's invoice for contract P–3181, which bears instructions directing payment to credit of Bozzo Commerce's account with Banque du Gothard; and (3) a photocopy of the list of accounts payable assigned to Gothard by the agreement, which includes an item titled Continental.

Banque du Gothard did not answer the complaint,[20] nor did it respond to BSI's motion for summary judgment; thus, it has not submitted any claim to the Court for the proceeds of contract P–3181. Nor has any other party claimed entitlement to the proceeds of this contract.[21] I find that BSI's submissions establish its claim to the proceeds of contract P–3181. BSI has pro-

---

19. The notice filed with the Department of State is dated Nov. 28, 1990. The date on the notice filed with the Westchester county clerk is difficult to make out, but appears to be a date in November 1990.

20. Jack Sutherland, a Continental Coffee Vice–President, states by affidavit that Banque Gothard answered the complaint and asserted a claim to contract P–3181 (Sutherland Aff. ¶ 10, attached to Pl. Mot. Sum. Judg.), but Gothard did not file an answer with the Court.

21. Correspondence from Banque Lavoro to Continental Coffee, attached as Exhibit F to the inter-

pleader complaint, claimed entitlement to the proceeds of two invoices, numbered # 912030/V03513(B) and # 912567/V13457A, both of which billed Continental for coffee shipped by Bozzo. Contract P–3181 covers invoice # 912238/VO3513(A), a lot that is believed by the Court to be distinct from V03513*(B)*, not only because of the differing suffixes, but also because the other numbers differ (912030 compared with 912238). Banque Lavoro did not answer the complaint in this action, nor did it file any opposition to BSI's motion for summary judgment. Thus the court is not considering any claim by Banque Lavoro to Contract P–3181 or to any other funds in this action.

duced uncontroverted evidence that the coffee sold under this contract secured its loan to Bozzo Commerce, that it protected this security interest by use of a trust agreement with Bozzo Commerce when it released bills of lading to Bozzo Commerce for the purpose of delivering this coffee to Continental, and that it perfected this security interest both by filing a financing statement under the terms of the N.Y.U.C.C. and by notifying Continental, the account debtor, of its interest in coffee sold to Continental by Bozzo. Accordingly, BSI's motion for summary judgment as to its claim to contract P–3181 is granted.

### F. Contract P–3180

BSI–Banca della Svizzera Italiana ("BSI") moves for summary judgment on its claim to the proceeds of contract P–3180. The amount on deposit with the court as proceeds of this contract is $ 1,784.49. (Sutherland Aff. ¶ 6, attached to Pl. Mot. Sum. Judg.) BSI's claim to the proceeds of contract P–3180 is based on the same documents and averments described for contract P–3181. No other party to this action claims any right to these funds. Accordingly, BSI's motion for summary judgment as to its claim to contract P–3180 is granted.

### G. Plaintiff's Motion for Summary Judgment

Plaintiff Continental Coffee moves for summary judgment on its demand that defendants be restrained from instituting any action against plaintiff, or against any green coffee, for recovery of the amounts they claim, that plaintiff be discharged from liability, and that plaintiff recover its costs and attorney's fees.

The only counterclaim against Continental which might bar its motion for summary judgment is a claim by interpleader defendants Bozzo Brasil and Banco Investcorp for alleged conversion of certain lots of coffee.[22] (See Bozzo Brasil Answer, ¶¶ 2–12, setting forth counterclaim.) This counterclaim asserts that Bozzo USA had no right to deliver to Continental Coffee two lots of coffee shipped by Bozzo Brasil, which fulfilled contracts P–3560 and P–3561. I find, for the reasons described in the discussion of contract P–3561, above, that Bozzo Brasil had no ownership rights in these lots separate from

the rights of Bozzo Commerce/Bozzo USA. Because Continental took delivery of these lots under valid contracts with Bozzo Commerce, I find that the claim for conversion cannot succeed. Accordingly, the counterclaim against Continental is dismissed, and Continental's motion for summary judgment is granted

### Conclusion

The motion for summary judgment by interpleader defendant Banco Svizzera della Italiana–BSI, for the proceeds of contract P–3180, in the amount of $ 1,784.49, and contract P–3181, in the amount of $ 60,471.13, is granted. The motion for summary judgment by interpleader defendant Banque Worms for the proceeds of contract P–3561 in the amount of $ 78,117.95 is granted. The motion for summary judgment by interpleader defendant Pedro Uribe A. Sucesores is denied. Plaintiff Continental Coffee's motion for summary judgment is granted, and the counterclaim against Continental Coffee by interpleader defendants Bozzo Brasil and Banco Investcorp is dismissed.

SO ORDERED.

---

22. The Court was informed in a telephone conversation on November 18, 1993, with Paul Giacomo, attorney for defendant Pedro Uribe A.

Sucesores Ltda., that Uribe's counterclaims are no longer being pursued.